AO 106 (Rev. 01/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No.
One Samsung Galaxy S8 cellphone, IMEI: )
356982084262237 )
)

FILED
FEB 2 6 2018
CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## APPLICATION FOR A SEARCH WARRANT

18MJ0921

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ____Southern____ District of ____California____ *(identify the person or describe property to be searched and give its location):* See Attachment A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):* See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of __18__ U.S.C. § __922(g)(5)__, and the application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Joseph Stearns, Special Agent ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/26/18

*Judge's signature*

City and state: San Diego, CA

Mitchell D. Dembin, U.S. MAGISTRATE JUDGE
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Joseph Stearns, being duly sworn, hereby state as follows:

## INTRODUCTION

1. This affidavit supports an application authorizing a search warrant for the following digital device, currently in the custody of the San Diego Sheriff's Department in San Diego, California, seized from Edgardo MENJIVAR (MENJIVAR) on January 31, 2018, more particularly described in Attachment A, incorporated herein:

    a. One Samsung Galaxy S8 cellphone, IMEI: 356982084262237 seized from MENJIVAR (the SUBJECT DEVICE).

2. The evidence to be searched for and seized is described in Attachment B, incorporated herein.

3. Based on the information below, there is probable cause to believe that the SUBJECT DEVICE contains evidence of a crime, specifically, violations of Title 18, United States Code, Section 922(g)(5) – Alien in Possession of a Firearm (the SUBJECT OFFENSE).

## EXPERIENCE AND TRAINING

4. I have been employed as a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) since September 2015. Prior to my employment with ATF, I was a Police Officer and Detective with the Wichita Police Department (WPD) for thirteen years. During my time with WPD, I was assigned to the Gang Intelligence Unit for five years where I conducted investigations involving both firearms and narcotics. I have attended the Federal Law Enforcement Training Center in Glynco, Georgia, where I graduated from the Criminal Investigators' Training Program (CITP). Upon completing CITP, I attended the ATF National Academy where I received instruction in the recognition, identification and prosecution of federal firearms laws and violations.

5. The facts set forth herein are those that I believe are relevant to the limited purposes of this affidavit, namely, to establish probable cause for the requested warrant. The affidavit does not, therefore, include each and every fact that I or other law

1  enforcement personnel may have learned in connection with this ongoing investigation. In
2  the affidavit, all dates and times are approximate.
3      6.    I have knowledge of the facts set forth below based on my review of the
4  reports, recorded statements, and evidence collected in this case. I have also spoken with
5  members of the San Diego Sheriff's Department team that originally searched the residence
6  and reviewed their reports of the same.

### FACTS SUPPORTING PROBABLE CAUSE

8      7.    On January 31, 2018, San Diego Sheriff's Department Deputies were at a
9  residence located at 3693 Beta Street, San Diego, California, pursuant to a state narcotics
10 search warrant. The warrant was based on prior narcotics seizures from two individuals
11 who deputies later learned rented a detached studio at the address. Prior to the execution
12 of the warrant, an adult male, later identified as MENJIVAR, was observed moving in and
13 around the main residence.
14     8.    During the execution of the warrant at the main residence, deputies discovered
15 four adults and three minors in the residence. The adults included MENJIVAR, his wife,
16 Isis Marlen Ramirez Adame (Isis), Isis' adult son, Alfredo DeJesus Ramirez (Alfredo), and
17 his wife, Jackeline Fonseca Ramirez (Jackeline). Alfredo and Jackeline indicated that one
18 of the minor children was their son, that they were visiting Isis, and that they did not live
19 at the residence.
20     9.    During the search of the main residence, deputies discovered two firearms.
21 They included a Paramount .32 caliber handgun (handgun) bearing serial number 284, and
22 a Remington 1187 Super Magnum 12-gauge shotgun (shotgun) bearing serial number
23 SM061816. The handgun was loaded with six rounds and was discovered in a gun case
24 located on the dresser in a bedroom. The shotgun was located in the living area of the
25 residence, under the cushions of a couch. The SUBJECT DEVICE was also seized during
26 the search of the residence and MENJIVAR identified it as his.
27     10.    Records checks indicate that the residence is owned and/or occupied by
28 MENJIVAR. Mail addressed to MENJIVAR was located in the bedroom where the

2

handgun was found, and men's clothing was also found in the dresser in which the handgun was found.

11. The firearms were seized and inspected. Preliminary checks revealed that the firearms were not manufactured in California. Therefore, the firearms traveled in, and/or affected interstate commerce to arrive in the state of California.

12. Preliminary records checks indicate that MENJIVAR and Isis are citizens of El Salvador and Mexico, respectively, that neither have legal status to live in the United States or legally possess a firearm. MENJIVAR's immigration "A-File" was received on February 21, 2018. The A-File contained the following documents and information:

   a. Photographs taken of MENJIVAR during past encounters. The photographs appear to match the individual identified as MENJIVAR on January 31, 2018.
   b. Reports stating that MENJIVAR was previously apprehended for entry without inspection on November 18, 1996. MENJIVAR remained in the United States based on an asylum claim and was issued an Employment Authorization Card (EAC). This EAC was renewed every year until August 7, 2013, under a beneficiary class description of Asylee Applicant Work Authorization.
   c. On July 3, 2013, MENJIVAR again applied for an EAC, but a withdrawal acknowledgement notice was ordered.
   d. On December 11, 2013, MENJIVAR applied for Temporary Protected Status but the application was denied. Based on this denial, MENJIVAR's beneficiary class description is listed as Entry without Inspection, thus making MENJIVAR deportable and illegally in the country
   e. Based on this denial, MENJIVAR's beneficiary class description is listed as Entry without Inspection, thus making MENJIVAR deportable and illegally in the country.

13. Also, based on a review of MENJIVAR's immigration history, it is my understanding that he never had the ability to legally possess a firearm.

14. MENJIVAR's A-file also included mailings and payroll documents that listed, 3693 Beta Street, San Diego, California, as his residence.

15. Based upon my training and experience as an SA, and consultations with law enforcement officers experienced in firearms investigations, I am aware that it is common for individuals involved in illegal acquisition and possession of firearms to use cellular telephones, computers, tablets, and personal digital assistants (collectively Digital Devices). Digital Devices enable these individuals to maintain contact with their suppliers and negotiate the acquisition of firearms through phone calls, text messages, emails, and other digital communications. Therefore, Digital Devices often contain indicia of the identity of the individual and/or his/her associates, as well as their criminal activity, to include but not limited to, call logs, voicemail messages, text messages, electronic messages (e-mail), photographs, videos, address books, contact lists, calendars, notes, and ledgers. Additionally, individuals often utilize Digital Devices with photograph and video capabilities to take photographs and videos of their firearms and their use and possession of those firearms.

16. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in firearms investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the firearms activities of MENJIVAR, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, videos, pictures and other digital information are stored in the SUBJECT DEVICE.

**PROCEDURES FOR ELECTRONICALLY STORED INFORMATION**

17. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services, and

4

rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

18. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

19. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**GENUINE RISKS OF DESTRUCTION**

20. Based upon my experience and training, and the experience and training of other agents with whom I have communicated, electronically stored data can be permanently deleted or modified by users possessing basic computer skills. In this case,

5

only if the subject receives advance warning of the execution of this warrant, will there be a genuine risk of destruction of evidence.

## PRIOR ATTEMPTS TO OBTAIN INFORMATION

21. The United States has not attempted to obtain this information by other means.

## CONCLUSION

22. Based on my training and experience, and the foregoing facts, I believe there is probable cause to believe the items listed above, as described in ATTACHMENT B, which are the fruits, instrumentalities, and evidence of the SUBJECT OFFENSE, will be found in the SUBJECT DEVICE, as described in ATTACHMENT A.

Joseph Stearns, Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Sworn to and subscribed before me this 26 day of February, 2018.

HONORABLE MITCHELL D. DEMBIN
United States Magistrate Judge

6

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The following property is to be searched:

(SUBJECT DEVICE) One Samsung Galaxy S8 cellphone, IMEI: 356982084262237 seized from MENJIVAR.

The SUBJECT DEVICE is currently in the possession of San Diego Sheriff's Border Crime Suppression Team's Detective Felipe Cabral.

## ATTACHMENT B

### ITEMS TO BE SEIZED

The following evidence to be searched for and seized pertains to violations of Title 18, United States Code Sections 922(g)(5):

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data:

    a.  tending to indicate efforts to illegally acquire and possess firearms;

    b.  tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the illegal acquisition and possession of firearms;

    c.  tending to identify co-conspirators, criminal associates, or others involved in the illegal acquisition and possession of firearms;

    d.  tending to identify travel to or presence at locations involved in the illegal acquisition and possession of firearms;

    e.  tending to identify the user of, or persons with control over or access to, the SUBJECT DEVICE; and/or

    f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.